# Erb, Appellant, *v.* The Public Service Commission of Pennsylvania.

*Public Service Commission—Jurisdiction—Common carrier—Motor Truck—Freight service—Holding out—Private contracts.*

On a complaint before the Public Service Commission that respondent was operating motor trucks as a common carrier without a certificate of public convenience, respondent testified that he operated under private "understandings," that he did not advertise and that he occasionally refused to carry goods. There was further evidence of the continued and practically regular daily operation of the trucks over the same route at rates uniform on similar classes of merchandise, and of the gradual increase of his equipment and the rapid growth of his business.

Such evidence warrants a conclusion that there had been indirect holding out and that he was engaged, and that it was well known that he was engaged, in the transportation business to and from the various cities mentioned.

Contracts, express or implied, are an incident to nearly every form of transportation, whether by common carrier or private carrier and are not a controlling factor in determining the question of common carriage.

A person whose sole business is transporting certain kinds of goods by motor trucks between two cities with regularity and at fixed prices for any one who applies for the service is a common carrier.

In such case the Public Service Commission has jurisdiction to require the discontinuance of such service unless or until a certificate of public convenience is applied for and granted by the Commission.

Argued March 15, 1928. Appeal No. 378, October T., 1927, by respondent from order of The Public Service Commission, Complaint Docket No. C-7252—1927, sustaining complaint wherein Lehigh Valley Transit Company and Reading Company were complainants and Fred Erb was respondent. Before HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ. Affirmed.

Complaint against the operation of a common carrier service without a certificate of public convenience.

The facts are stated in the opinion of the Superior Court.

The Commission issued an order requiring respondent to cease operating until he secured a certificate of public convenience. Respondent appealed.

*Error assigned* was the order of the Commission.

*John A. Boyle,* for appellant.

*John Fox Weiss,* Counsel, and with him *Wendell Y. Blanning,* Assistant Counsel, and *E. Everett Mather, Jr.,* Legal Assistant, for appellee.

*Charlemagne T. Wolfe* and *William J. Wilcox,* and with them *Thomas J. Perkins,* for the intervening appellees.

OPINION BY CUNNINGHAM, J., April 16, 1928:

The Lehigh Valley Transit Company, a public service company, transporting not only passengers but also express matter and light freight between Philadelphia, Bethlehem, Allentown and Easton, complained to the Public Service Commission that Fred Erb, a resident of Philadelphia, was engaging in the business of a common carrier, for hire, of freight and merchandise between these cities by means of motor vehicles without having secured the approval of the Commission. The Reading Company was permitted to intervene in the complaint.

The Commission, after a hearing and investigation in accordance with the act creating it, sustained the complaint and ordered Erb to desist from the transportation business in which he is now engaged until he shall have obtained a certificate of public convenience in approval thereof. Erb, having denied in his answer that he is "operating motor vehicles as a common carrier" and having averred that he is operating

only as a private carrier "for the delivery of goods under contract with certain houses in Allentown and Bethlehem," now appeals from the order.

Our Public Service Company Law applies not only to incorporated common carriers doing business within this state but also to "all persons engaged for profit in the same kind of business." Common carriers are thus defined: "the term 'common carrier' as used in this act includes any and all common carriers, whether corporations or persons, engaged for profit in the conveyance of passengers or property, or both, between points within this Commonwealth, by, through, over, above or under land or water, or both." As clearly stated for this court by Judge KELLER in an opinion filed at this term in Frantz v. Public Service Commission, 93 Pa. Superior Ct. 416, the question of the jurisdiction of the Commission to make the order depends entirely upon "whether or not appellant has been operating as a common carrier in the service complained of." No substantial issues of fact arise under the evidence and the order is based upon appellant's own testimony. After a careful reading of all the testimony we are satisfied that the material facts and the inferences reasonably deducible therefrom have been fairly summarized in the brief for the Commission substantially as follows:

Appellant is engaged in the business of transporting merchandise between Philadelphia and Allentown, Bethlehem and Easton. In this business, he used two five-ton trucks and one two and a half-ton truck. Each truck makes about three trips per week. Appellant started in this business in 1923. At that time he bought a truck and was hired by the Philadelphia and Lehigh Transportation Company. When that company went out of business, he began to operate independently. At that time, about December, 1923, he made written contracts with his shippers, five in number. The contracts were with the following persons: a printer in

Allentown, covering shipments of paper from Philadelphia; an owner of stores in Allentown, Bethlehem and Easton, covering shipments of groceries, etc., from Philadelphia; a flour mill in Easton, covering shipments of flour to American Stores' warehouses in Philadelphia; an upholstering firm in Philadelphia, covering shipments of furniture from a store in Allentown; a paint company in Philadelphia, covering shipments of paint from a manufacturer in Easton.

These contracts have expired, and appellant does not now transport by virtue of them. He is now operating under what he claims are verbal contracts, described by him on cross examination as "understandings." He named some twenty firms with which he had such understandings, of which probably six were sugar or grocery brokers for other patrons. The exact number of his customers is not certain, as he named them from memory and has no record of them. His books show only the names of persons from whom he has received goods for shipment.

The nature of these contracts is illustrated by appellant's description of the manner of making them. A contract with a furniture dealer was made as follows: "Q. When was that understanding made? A. That understanding was made—I don't remember the time, but I was talking to Mr. Speigel himself. Mr. Speigel said, 'You do my hauling until I give you notice to stop.' Q. Does that cover all the hauling that he has or just what he offers you? A. Just what he offers me. I don't know whether I do all his hauling."

A contract to carry matches thus: "Q. The Ohio Match Company—when did you make that agreement? A. About three months ago, I guess. Q. Was it as long as three months ago? A. About two or three months, I think it is. Q. It wasn't within a month? A. I don't know, I really cannot remember when the Ohio Match Company called me up that I should haul some stuff up to Allentown. Q. They called you up

and asked you to haul some stuff? A. Yes. Q. Who was it called? A. I don't know. Maybe it was a shipper. Q. You agreed to haul it? A. Yes."

Concerning another patron appellant testified: "Q. What did he say about hauling; did he say how long he wanted you to haul, or anything of that kind? A. He called me up that I should take some stuff up to Allentown. He asked me, 'Whenever we have something I will call you again; I want you to do the hauling for me.' "

Appellant has no advertised place of business. He has rented space on the loading platform of the Owl Transfer Company at 119 N. Front Street in Philadelphia and has made arrangements with some six sugar and grocery brokers, under which they telephone to him when they have purchased goods for delivery to wholesale grocers in Allentown, Bethlehem or Easton. He receives these goods either at the refinery warehouses or at his loading platform. He also has arrangements with the consignees who pay the freight. In addition to the transportation under orders from brokers, he carries under agreements with a vinegar company, a cheese manufacturer, a root beer concern, a hotel supply company and others. He also transports goods to Philadelphia from the three cities referred to. These shipments include paint, furniture and flour.

Appellant does not require that shipments be made regularly, or that they be of any definite weight. One of his customers ships almost every day, another twice a week, another "maybe a Saturday I am sent a case or two," for another "sometimes takes two or three months to get an order." The shipments vary in weight from a fixture for a soda fountain to a truck load of sugar.

The rates charged by appellant are uniform on similar classes of merchandise. His regular rate for sugar is 20 cents a hundred although one shipper pays 25

cents for a special service. The rate for canned goods, vinegar in barrels, etc., is 25 cents a hundred; on furniture frames it is $1.50 a hundred, etc. Shipments from various customers are carried on the same truck. He has "a truck going and coming each way, and any of these shippers can put goods on it." Appellant does not formally advertise or solicit new customers but it seems to be well known that he is engaged in the business. He has increased his business from five shippers to about twenty-five in four years. His present customers have shipped goods on his trucks for varying lengths of time. Some of them he began to serve in 1923, others he first served two years ago, one year ago, or immediately prior to the hearings. This new business he secured because the shippers came to him unsolicited. He has agreed to carry for those who asked him and is willing to make "similar private contracts" with others. It is true that he has refused to carry certain goods offered to him, but apparently because the offer was not in line with his regular business. The shipments which he refused were packages, pieces of furniture, "a parlor-suite or something like that." The only offer of regular business which he refused involved shipments from a foundry at Sellersville.

That appellant has practically undertaken to serve all who apply within the limits of his undertakings and facilities is shown, not only by his actions in accepting such shipments, but also by his explanation of the reason for refusing others, as follows: "Q. Have any inquiries been made to you in the last year to do that? A. Well, there was a number of them asked me whether I was going to take packages or pieces of furniture up to Allentown, Easton and Bethlehem, or Sellersville, Center Valley or Coopersburg, and I refused them, and I said my hauling only is a private route from Philadelphia to Bethlehem. I said I do hauling along my route.......Q. When you speak

about your route, what do you mean by that? A. I mean wholesale grocers that is in Allentown, Bethlehem and Easton.''

Notwithstanding the extent of appellant's transportation business, as indicated by his testimony, he contends that it is a private and not a public carriage in which he is engaged. As we understand his argument it is predicated upon several grounds, namely, that he is working under so-called contracts with particular concerns; that he does not hold himself out to be a public carrier or solicit business indiscriminately; and that he has refused to haul for persons with whom he was not under contract. We are not here concerned with any question relative to his duty to carry, or liability while carrying, but solely with the nature of his present employment, that is, whether he is holding himself out as engaging in the transportation of goods for hire as a public employment or merely as a casual occupation incident to some other business and engaged in under special contracts of employment in each particular case. The presence or absence of the sort of contracts or understandings disclosed by appellant's testimony should not be a controlling factor in the determination of the question involved. Contracts, express or implied, are an incident to nearly every form of transportation, whether by common or private carriage. Nor do we consider the fact that appellant has not advertised his business by circular, mail or otherwise, as decisive of the question whether he has held himself out as a carrier. The original purchase and gradual increase of his equipment, the continuous and practically regular daily operation of his trucks over the same route, and the fact that his business has grown with rapidity and to the extent indicated by his testimony would warrant the conclusion that there has been an indirect holding out and that it is well known that he is engaged in the transportation business to and from the cities mentioned.

The fact that upon occasion he has declined to transport certain articles for certain people under the circumstances related by him should not have attached to it the importance contended for by his counsel. These matters are all to be considered, but in the light of all the circumstances disclosed by this record no one of them—or even all of them taken together—is conclusive. The duty of serving all without discrimination is one of the distinguishing incidents of common carriage, but in McBride v. McNally, 243 Pa. 206, an action for trespass to recover damages for personal injuries sustained by a woman in consequence of a fall from the gang-plank of defendant's excursion steamer, hired by a society to carry members who should purchase tickets, and in which it was contended that the owner was a private carrier, our Supreme Court said: "No more can it be contended that the appellant was a private carrier. His was an excursion boat, so referred to throughout the case, and so admitted to be in the history of the case accompanying the argument. Whether the duty which ordinarily distinguishes common from private carriers—that of serving all without discrimination—attached to him is immaterial. The one business he was engaged in was the operation of his boat in the carrying of passengers for hire, and the fact that he was so employed is sufficient to constitute him a common carrier."

In Piercely v. Public Service Commission, 73 Pa. Superior Ct. 212, this court said: "No carrier serves all the people. His customers are limited by place, requirements, ability to pay and other facts. The public does not mean everybody all the time." There are necessarily certain limitations even upon the duty of a common carrier to serve all who apply to him. His undertaking may be limited to a particular territory or route or to such classes of goods and property as can conveniently be carried upon the vehicles he operates. "A private carrier is one who, without be-

ing engaged in the business of carrying as a public employment, undertakes to deliver goods in a particular case for hire or reward": 10 C. J., p. 38, sec. 4. On the other hand "a common carrier is one that holds itself out as ready to engage in the transportation of goods for hire as a public employment and not as a casual occupation...... In general the liability of carriers does not attach to one that does not hold itself out as pursuing that business, but in the particular case, and in each particular case, acts only in consequence of a special employment": Idem, p. 41, Sec. 10. Appellant has no business or employment other than the business of carrying, in which he has been engaged for the past five years, and it cannot be said that the carriage shown by his testimony has been merely incidental to some other business or employment and performed by virtue of special contracts. These considerations distinguish this case quite clearly from Frantz v. Public Service Commission, supra, and Harder v. Public Service Commission, 90 Pa. Superior Ct. 373. It is to be noted that appellant has not been refused a certificate of public convenience. All that has been decided by the Commission is that he has been and is now engaged in the business of carrying for hire as a public employment; that he is a common carrier within the meaning of our Public Service Company Law and may not continue that business without the approval of the Commission. What constitutes a common carrier is a question of law but whether one charged with being a common carrier has by his method of operation brought himself within that definition is a question of fact to be determined from the evidence in each case as it arises. From a consideration of the entire record a majority of the members of this court are of opinion that appellant is operating as a common carrier in rendering the service complained of and that the order appealed from is reasonable and in conformity with law.

The order is affirmed.