Pa. Chautauqua, Appellant, *v.* Public Service
Commission et al.

Argued March 21, 1932.

Before Trexler, P. J., Keller, Gawthrop, Cunningham, Baldrige, Stadtfeld and Parker, JJ.

*Wm. H. Earnest,* and with him *E. E. McCurdy* and *Joel G. Earnest,* for appellant, cited: Root v. Commonwealth, 98 Pa. 170; Overlook Development Company v. Public Service Commission, 101 Pa. Superior Ct. 217; Commonwealth v. Benn, 284 Pa. 421.

*Douglass D. Storey,* for intervening appellee, cited: Terminal Taxicab Company v. Kutz, 241 U. S. 252; Beetem v. Carlisle Light, Heat & Power Company, 273 Pa. 82; Riddle v. Aspinwall-Delafield Company, 5 Pa. P. S. C. Rep. 459.

*John Fox Weiss,* Counsel, and with him *E. Everett Mather, Jr.,* Assistant Counsel, for The Public Service Commission, appellee, cited: City Transfer Company v. Public Service Commission et al., 93 Pa. Superior Ct. 210; Lloyd v. Haugh, 223 Pa. 148; Com. ex rel. Baldridge v. Philadelphia Electric Company, 300 Pa. 577.

Opinion by Gawthrop, J., May 4, 1932:

Appellant is a corporation of the first class, its corporate purpose as stated in its charter granted by the court of common pleas of Lebanon County, June 13, 1892, being "the advancement of literary and scientific attainment among the people and the promotion of popular culture in the interests of Christianity." It has an authorized capital stock of $30,000, of which $8,500 par value is issued and outstanding. Incidental to its purpose it acquired a tract of about ninety acres of land which it laid out into building lots and streets. Lots were sold to various persons who erected cottages thereon, the number of cottages now being about one hundred and fifty. The development is popularly known as Mt. Gretna. Appellant installed a sewage system and a water supply system and furnished service from these systems at uniform fixed charges. In 1914 it applied to the Commissioner of Health for a permit under the Act of April 22, 1905, P. L. 260, for approval of its source of supply of water to the public and received the permit. Appellant's stockholders and water consumers are not identical, some consumers not being stockholders. The character of the community has changed from the original plan of a place for education and cultural development to a summer resort, although several of the cottages are occupied during the entire year. In 1926 the Borough of Mt. Gretna was incorporated with municipal limits identical with those of the tract of land acquired by appellant. In 1927 the borough granted local consent franchises to the Bell Telephone Company of Pennsylvania and to the Metropolitan Edison Company to occupy the public streets and highways with their public service facilities. In 1930 the borough enacted an ordinance adopting as public highways the streets originally laid out by appellant. Its mains and service lines are in these public highways. At the present time it supplies

about one hundred and fifty-two consumers of water within the borough, among whom are the intervening appellees. On August 16, 1930, appellant cut off the water supply which it has been furnishing to the cottage occupied by the intervening appellees, alleging that they were delinquent in the payment of their water service rent, sewer rent and maintenance assessment. On the same day the intervening appellees paid all of the charges except an assessment of $34.50 for upkeep of the grounds, and demanded the restoration of water service. Appellant refused to restore the water service until the other assessment was paid. Whereupon, the intervening appellees filed their complaint with the Public Service Commission seeking the restoration of water service and asking for an order requiring appellant to continue to supply them with water and to file, post and publish a schedule of rates and otherwise to comply with the requirements of the Public Service Company Law. After a hearing the Commission found that appellant was acting as a Public Service Company in the supply of water to the public in the Borough of Mt. Gretna, and filed an order directing it forthwith to restore water service to the cottage of the intervening appellees. From that order this appeal was taken.

The main question is whether appellant, in serving the intervening appellees with water was rendering a public service and is, therefore, subject to the jurisdiction of the Public Service Commission as to its water service. The Commission found that it is. The able counsel for appellant strenuously contend that it is not subject to the regulation of the Commission because (1) it is a corporation of the first class, not for profit, and that the supplying of water by it is entirely incidental to the purpose for which it was created; and (2) it serves water only under private contract.

As was stated by Mr. Justice HOLMES in a leading

case involving the question whether a taxicab company was a public utility, ''the important thing is what it does, not what its charter says'': Terminal Taxicab Co. v. Kutz, 241 U. S. 252; 60 L. Ed. 984. In that case the charter of the company expressly forbade it to engage in public service, but the Supreme Court sustained the jurisdiction of the Public Utilities Commission and held that the company's taxicabs were ''a public utility by ancient usage and understanding (Munn v. Illinois, 94 U. S. 113, 125; 24 L. Ed. 77, 84), as well as common carriers by the manifest meaning of the act.'' The decisions of our Supreme Court are to the same effect. In Beetem v. Carlisle Light, Heat & Power Co., 273 Pa. 82, the defendant's charter permitted it to supply light, heat and power by means of electricity only, but it was actually supplying the public with live steam. It was held that as to the steam service the company was rendering a public service subject to the jurisdiction of the Commission. In Lloyd v. Haugh, 223 Pa. 148, it was held that a company incorporated to do a general warehouse and storage business was a common carrier as to certain of its operations. From these and other authorities which might be cited, it is clear that the service which a company renders is determinative of the question whether or not it is a Public Service Company within the terms of our Public Service Company Act. A company which is in fact rendering service as a public utility cannot escape regulation on the ground that it has no charter right to render such service.

Counsel for appellant contend also that the service rendered by it is not public because water is furnished only to persons who have acquired title to lots within the Chautauqua grounds under deeds containing a covenant providing, inter alia, that the grantee will ''pay a due proportion of the expense of ...... maintaining a water supply ...... and for any

other purposes which shall be deemed necessary, expedient and salutory by the said grantor or by its Board of Managers;'' and that the water is furnished in fulfillment of private contracts. They urge also that in furnishing water appellant is acting merely as a mutual company operating for the common good, each member bearing his due proportion of the expense. The record does not support these contentions. The covenants in the deeds, referred to above, impose no duty on appellant to render water service and no duty on the grantee to take water from appellant. When the intervening appellees were being served with water they were not grantees under a deed containing the form of covenant here under consideration. They were not record title holders at all. Therefore, the covenants have no bearing on the question before us. Assuming for the purpose of argument, but by no means deciding, that mutual companies are not subject to the provision of the Public Service Company Law, appellant is not a mutual company. The distinguishing feature of a mutual company is that it serves at cost only its own members who have the control over its management. Appellant does not do this. It supplies water to all the inhabitants of the borough, whether they are stockholders of the corporation or not, at uniform rates. Its system is the only water supply of the inhabitants of the borough. It furnishes them with a prime necessity of life. In our view the character and extent of the water service rendered make it public. Being a public one it is subject to regulation under the statute. One who uses his property in supplying a municipality with water clothes such property with a public interest and subjects the business to regulation: VanDyke v. Geary, 244 U. S. 39; 61 L. Ed. 973. See also Wolff Packing Co. v. Court of Industrial Relations, 262 U. S. 522; 67 L. Ed. 1103. There is nothing in Article I, Section 1 of the Public

Service Company Law which exempts appellant from regulation by the Commission. The term "Public Service Company" as defined therein expressly includes "water corporations." As this term is used in the section it is not restricted to a water corporation which has been chartered as such for the supply of water to the public. The term includes a corporation which holds itself out to render service to the public for compensation. It follows that appellant's action in cutting off water service to enforce payment of a collateral obligation of one of its patrons was wholly unjustified. "The service cannot be cut off to enforce payment ..... of a collateral liability not connected with the particular service": 20 C. J. 333. Our conclusion is that the report of the commission fully justifies the order made.

The order is affirmed at appellant's costs.