219 P.2d 324

NATURAL GAS SERVICE CO. et al. v. SERV–YU COOPERATIVE, Inc.

No. 5087.

Supreme Court of Arizona.

May 29, 1950.

view of article 15, section 2 of the Constitution, rests on the single factor that: "* * * Its character as a corporation whether it is a public service corporation or otherwise must be determined by what its articles and by-laws authorize it to do rather than by what it is now doing or may do in the immediate future. * * *" 69 Ariz. 328, 213 P.2d 677, 684.

Stanley A. Jerman and Harold L. Jerman, Walter Roche, Phoenix, for appellant, Natural Gas Service Co.

Knapp, Boyle, Bilby & Thompson, Arthur Henderson, Tuscon, for appellant El Paso Natural Gas Co.

Evo DeConcini, Attorney General, Perry M. Ling, Chief Assistant Attorney General, for appellant Corporation Commission.

Dougherty, Chandler & Connor, Phoenix, for appellee.

LA PRADE, Chief Justice.

After our decision and opinion in this case, see 69 Ariz. 328, 213 P.2d 677, a motion for rehearing was granted and oral arguments heard. An exhaustive and attentive review of our former opinion has not caused the court to arrive at any different conclusion as to the correctness of our original disposition of the case. Our attention has been directed to the fact that the conclusion drawn, that appellee is a public service corporation within the pur-

■ We are now of the opinion that while this analytical observation may be technically correct, admittedly the statement is too broad and though doctrinal in form cannot be defended in the light of reason as exemplified by many well-considered cases. For collection and analysis of applicable cases see Rural Electric Co. v. State Board of Equalization, 57 Wyo. 451, 120 P.2d 741, rehearing denied 122 P.2d 189. The mere power, stemming from its articles of incorporation, "to manufacture, purchase, acquire and accumulate natural gas and/or gas * * * for its members only, and to transmit, distribute, furnish, sell and dispose of such gas to its members only * * *" etc. standing alone is not enough to brand it as a public service corporation. There were other factors that should have been pointed out, all of which were evidenced by our recitation of the facts in the original opinion.

1. What the corporation actually does.

2. *A dedication to public use.*

3. Articles of incorporation, authorization, and purposes.

4. Dealing with the service of a commodity in which the public has been generally held to have an interest.

5. Monopolizing or intending to monopolize the territory with a public service commodity. Valcour v. Village of Morrisville, 110 Vt. 93, 2 A.2d 312.

6. Acceptance of substantially all requests for service. Consolidation Coal Co. v. Martin, 8 Cir., 113 F.2d 813, 817; Wingrove v. Public Service Commission, 74 W.Va. 190, 81 S.E. 734, L.R.A.1918A, 210.

7. Service under contracts and reserving the right to discriminate is not always controlling. State ex rel. Bricker v. Industrial Gas Co., 58 Ohio App. 101, 16 N.E.2d 218; Industrial Gas Co. v. Public Utilities Commission of Ohio, 135 Ohio St. 408, 21 N.E.2d 166.

8. Actual or potential competition with other corporations whose business is clothed with public interest. Industrial Gas Co. v. Public Utilities Commission, supra.

 While the articles of incorporation authorizing the corporation to act as a public utility are not conclusive, the fact of such authorization may be considered in the determination of the ultimate question. Lamb v. Calif. Water & Telephone Co., Cal.App., 121 P.2d 852, 858, affirmed on appeal 21 Cal.2d 33, 129 P.2d 371. See also Commonwealth v. Fhilbert Paving & Construction Co., 229 Pa. 231, 78 A. 104. In order to classify a corporation which has never engaged in business, access of necessity is always had to its articles of incorporation to determine the purposes for which it was formed and the powers conferred upon it. 18 C.J.S., Corporations, § 22b, p. 400. In this behalf appellee strenuously insists that the powers conferred extended to "members only," and that the finding of the court to the effect that the corporation "has never in anywise held itself out as a public corporation or made any offer or offers to serve the public or any others than its members; that it has never by any solicitation, declaration, act or any other means, indicated any intention of serving the public generally, or of serving any others than the members of the Cooperative" is binding on this court. To this contention we will avert later.

 A dedication to public use is always a question of intention.

"* * * that intention may be shown by the circumstances in a case. The facts govern. It does not, as will appear later, solely depend upon the wishes and the declarations of the owner. This much, doubtless, is true, that an owner of such a plant must at least have undertaken to actually engage in business and supply at least some of his commodity to some of the public. * * *" Rural Elec. Co., supra [57 Wyo. 451, 120 P.2d 747].

In determining the question of whether we are dealing with a public utility much

enlightenment is gained if we know that the utility is dealing with the service of a commodity in which the public has generally been held to have an interest. Van Dyke v. Geary, 244 U.S. 39, 37 S.Ct. 483, 61 L. Ed. 973. The emphasis was placed on this factor in Pennsylvania Chautauqua v. Public Service Commission, 105 Pa.Super. 160, 160 A. 225, and in Industrial Gas Co. v. Pub. Utilities Comm., supra. Appellee suggests that the true criterion by which to judge of the character of the use of any plant or system alleged to be a public utility is whether the public may enjoy it of right or by permission only, being the rule laid down in Junction Water Co. v. Riddle, 108 N.J.Eq. 523, 155 A. 887. This rule was justly criticized in Rural Elec. Co., supra, as a categorical statement not entirely correct, as follows: " * * * While that feature frequently comes into prominence, it is, perhaps, not quite correct to call it a 'criterion.' It is, rather, ordinarily, an incidence, a necessary result, an essential feature, of the dedication to public use. To state that property has been devoted to public use is to state also that the public generally, in so far as it is feasible, has the right to enjoy service therefrom. It may be as difficult to determine the one fact as the other. In such case we cannot determine the right to demand such service by the fact that the plant is a public utility, and the fact that it is a public utility by the fact that the right to demand the service exists. That would be simply reasoning in a circle. * * *"

In the Wyoming case, supra, the cooperative relied on the rule stated in 51 C.J. 5, which states that the test as to whether an owner is a public utility is "whether or not such person holds himself out, expressly or impliedly, as engaged in the business of supplying his product or service to the public as a class or to any limited portion of it, as contra-distinguished from holding himself out as ready to serve only particular individuals." In disposing of this contention the court made the following observations which we believe to be especially apropos in the instant case: " * *. * Of course, if the service is rendered pursuant to contract or limited membership, it is difficult to hold that one has expressly held himself out as ready to serve the public generally. But the text does not require an express holding out. It may be done impliedly, as by wide solicitation and other factors. Keystone Warehousing Co. v. Public Service Commission, 105 Pa.Super. 267, 161 A. 891; Bingaman v. Public Serv. Comm., 105 Pa.Super. 272, 161 A. 892; Erb v. Public Serv. Comm., 93 Pa.Super. 421. This counsel have overlooked. If by entering into contracts, or limiting service to members, the owner may in all cases escape the burdens attending a public utility, the plaintiff herein cannot be said to be such utility. If that is true, then, of course, plaintiff, though it should absorb all other

240

like organizations in the state, and obtain a large membership in all rural sections therein, could not even then be called a public utility, and we are unable to see how it would make any difference if it should make most of the consumers of electricity in our towns and cities its members. The authorities do not, we think, call for any such result."

*What the corporation does or, as in the instant case, what it proposes to do.* See Davis v. People ex rel. Public Utilities Commission, 79 Colo. 642, 247 P. 801; Terminal Taxicab Co. v. Kutz, 241 U.S. 252, 36 S.Ct. 583, 584, 60 L.Ed. 984, Ann.Cas. 1916D, 765. In the latter case it was said that a service may affect "so considerable a fraction of the public that it is public in the same sense in which any other may be called so. * * * The public does not mean everybody all the time." In the Colorado case of Davis v. People, supra, it appears that Davis hauled freight by truck for over 90% of shippers in his territory. He had organized most of the shippers into an association, which was in fact a sham organization. Davis hauled goods under a contract with this organization. Over his objection he was held to be a common carrier and the limitation of service "only to members" of the association was branded as "a mere device to hoodwink the law." [79 Colo. 642, 247 P. 802]

In the instant case the by-laws provided that membership was open to any one who applied and paid the fees required, and the

secretary testified that the only purpose for the organization of the "Co-op" was to eliminate appellant, the certificated utility in the field. The incorporators of appellee were customers of appellant who proposed to quit appellant and purchase gas direct from the El Paso Company, presumably proposing to use appellee's fixtures or others in their stead. Other users and customers of appellant were standing by prepared to join the "Co-op" and desert appellee. It is proper to note in this respect that all of these customers were large users of gas, the loss of which business would materially affect appellant.

Entering into private contracts was held not to be controlling, Erb v. Public Service Commission, 93 Pa.Super. 421; Keystone Warehousing Co. v. Public Service Commission, 105 Pa.Super. 267, 161 A. 891, and the court in Goldsworthy v. Public Service Commission, 141 Md. 674, 119 A. 693, pointed out that if entering into contracts with customers would control the determination whether an owner is a public utility or not, that would be an easy way of evading the law.

In Van Dyke v. Geary, supra, the plaintiffs organized a corporation under the name of The Miami Townsite Co. to acquire a tract of land in Gila County, Arizona, and establish a town thereon, which the corporation did. Lots were sold to purchasers with the understanding that they might purchase water from Van Dyke Water Co., the rates to be fixed by it. An or-

der of the Corporation Commission declaring the company to be a public utility and attempting to establish rates was challenged. Mr. Justice Brandeis, speaking for the Supreme Court, said: "* * * that lot purchasers bought with the understanding that they might purchase water from Mrs. Van Dyke's water system at rates fixed by her,—are all facts of no significance; *for the character and extent of the use make it public; and since the service is a public one, the rates are subject to regulation.*" (Emphasis supplied.) [244 U. S. 39, 37 S.Ct. 486]

Industrial Gas Co. v. Public Utilities Commission, supra, involved every vital question under consideration in the case at bar. It appears therein that plaintiff company was operating about 50 miles of pipe lines, was serving 19 industrial consumers and 12 private consumers, all under written contract which stipulated the price to be paid for gas; the plaintiff company never held itself out as ready to serve the public generally, and had refused to serve certain applicants. The company made an application to be permitted to withdraw from the field of serving private consumers, and amended its certificate of incorporation to that end. It contended that it was *not* a public utility. The court, holding that it was, stated·in part as follows:

"* * *·. It is what the corporation is doing·rather than the purpose clause that determines whether the business has the element of public utility. (Citing cases.)

"The appellant with its fifty miles of pipe lines running through four counties supplying nineteen industrial plants with natural gas was rendering a service to a substantial part of the state that would ordinarily be serviced by public utilities under regulatory restrictions.

"It may well be urged that a corporation, calculated to compete with public utilities and take away business from them, should be under like regulatory restriction if effective governmental supervision is to be maintained. Actual or potential competition with other corporations whose business is clothed with a public interest is a factor to be considered; otherwise corporations could be organized to operate like appellant and in competition with bona fide utilities until the whole state would be honeycombed with them and public regulation would become a sham and delusion.

"What appellant seeks to do is to pick out certain industrial consumers in select territory and serve them under special contracts to the exclusion of all others except such private or domestic consumers as may suit its convenience and advantage. There were other industrial consumers with whom the appellant refused or failed to agree and so did not serve them. If such consumers were served at all, it must necessarily be by a competitor. If a business so carried on may escape public regulation then there would seem to be no valid reason why appellant may not extend the service to double, triple or many times the number

now served without being amenable to regulative measures."

"* * * it is not a controlling factor that the corporation supplying service does not hold itself out to serve the public generally. It has been held that a business may be so far affected with a public interest that it is subject to regulation as to rates and charges even though the public does not have the right to demand and receive service. (Citing cases.)

"Regardless of the right of the public to demand and receive service in a particular instance, the question whether a business enterprise constitutes a public utility is determined by the nature of its operations. Each case must stand upon the facts peculiar to it. A corporation that serves such a substantial part of the public as to make its rates, charges and methods of operations a matter of public concern, welfare and interest subjects itself to regulation by the duly constituted governmental authority. Clarksburg Light & Heat Co. v. Pub. Serv. Commission, 84 W.Va. 638, 100 S.E. 551. Nor should the curtailment of its incidental corporate functions made with the purpose of avoiding public regulatory processes be determinative of the true character of its business. Thus, changing the purpose clause of its charter, refraining from use of the right of eminent domain, avoiding a holding out to serve the public generally and selling only to select consumers by private contract could be employed as subterfuges by many public utility companies. If the business is still affected with a public interest, it remains a public utility.

"It is the conclusion of this court that appellant dedicated itself to public utility service in behalf of a substantial part of the public and within a substantial area so as to make its business a matter of public concern, welfare and interest; consequently it is a public utility and subject to regulation by the Public Utilities Commission." [135 Ohio St. 408, 21 N.E. 168.]

■ The principles announced in all of the foregoing cases clearly establish that the appellee corporation cannot avoid public regulation by the simple device of incorporating as a non-profit membership corporation where its declared purpose is (1) to sell and distribute a commodity in which the public as a whole is generally interested, (2) to serve a substantial portion of the public within the meaning of the cases, (3) to secure a monopoly—in any event a monopoly of the lucrative business, (4) to compete with a certificated public service corporation already in the field.

It is suggested that we should not declare appellee to be a public utility until it actually engages in business and a determination made it has in fact extensively invaded another's field. Perhaps "an ounce of prevention is better than a pound of cure." The record indisputably shows that it will materially invade the field to the financial detriment of appellant from the very moment it leaves its swaddling clothes.

■ Among the grounds particularly stressed as the basis for a rehearing is that "The court erred in its decision, which in effect subjects the cooperative to public utility regulation for the reason that such holding results in the deprivation of private property without due process, and the invasion of private contractual rights, in violation of Article IV, Constitution of the State of Arizona, and Article I, Section 10, of the United States Constitution, as well as the Fourteenth Amendment to said Constitution."

Where an activity or a business is affected with the public interest, the courts have universally held that to subject such activity or business to regulation does not violate either the Fifth Amendment or the Fourteenth Amendment of the Federal Constitution. Nebbia v. People of State of New York, 291 U.S. 502, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; Am. Fed. of Labor v. American Sash & Door Co., 67 Ariz. 20, 189 P.2d 912, affirmed 335 U.S. 538, 69 S.Ct. 258, 93 L.Ed. 222, 6 A.L.R.2d 481. The contractual rights of appellee were in no manner affected by the enactment of the constitutional provisions under consideration and the various statutes that have followed implementing it. These provisions all antedated the organization of the appellee corporation, and it is subject to them. Chicago, B. & Q. R. R. Co. v. Cram, 228 U.S. 70, 33 S.Ct. 437, 57 L.Ed. 734; Arizona Power Co. v. State, 19 Ariz. 114, 166 P. 275.

■ In speaking of the implementing statutes that have followed the enactment of the constitutional provision, it might be well at this time to state that we do not agree with the theory of appellee that the legislature in the enactment of Act 90 of the Revised Statutes of the first state legislature, 1912, only intended to regulate public service corporations when operated "for profit." Said Act 90 subjected public service corporations to regulation when operated "for compensation." The present statute 69-201, A.C.A.1939, subjects public service corporations to regulation where the products are disposed of "for sale" or "for compensation." Public regulation of necessity is concerned not only with the service rendered but also with the price charged the public.

Under the issues made in this case we were not called upon to and did not decide that the appellee should or could by any order or statute be required to serve the public generally. What we did and now decide is that appellee Serv-Yu Cooperative, Inc., is a public service corporation, subject to the jurisdiction and regulation of the Corporation Commission.

The original decision is hereby approved and reinstated as herein clarified.

UDALL and PHELPS, JJ., and DUDLEY W. WINDES, Superior Judge, concurring.

Note: Justice DE CONCINI, whose name appears on the briefs as Attorney

244

General, did not participate in this opinion.

STANFORD, Justice (specially concurring).

I heartily concur in the conclusion reached by the majority opinion in the disposition of the motion for rehearing by appellee, but desire to enlarge on one important phase of the majority opinion.

By the appellee's petition for rehearing they call our attention to legislative construction of section 2 of article XV of our constitution. As an explanation of that appellee states as follows: "Section 2 of Article XV of the Arizona Constitution was construed by the first State Legislature as applying only to corporations furnishing the services named in said section to the public for profit. Act 90 of the regular session of the first State Legislature implemented Article XV of the Arizona Constitution. Said Act recognized throughout its 87 sections that Section 2 of said Article XV of the Constitution applies only to corporations serving the public for profit. Thus Section 2, paragraphs k, l, n, p, r, t, v, and x, made express companies, common carriers, and pipe line corporations, gas corporations, electrical corporations, telephone corporations and water corporations, public service corporations subject to regulation by the Corporation Commission *when operated for compensation*. It will thus be observed that Act 90 put all of the several kinds of corporations mentioned in Section 2, Article XV on the same basis."

With the above I agree, but I believe the contention of appellee is disposed of against its interest in our case of O'Neil v. United Producers & Consumers Co-operative, 57 Ariz. 295, 113 P.2d 645, 648, which is a case having to do with the collection of a sales tax by the Arizona State Tax Commission from a co-operative. I submit the following taken from said case as a complete answer to the contention of appellee: "It is suggested by appellee that section 73-1302, Arizona Code of 1939, which defines business within the meaning of the Excise Revenue Act, excludes or exempts from the payment of the sales tax those businesses that are not carried on for the purpose of gain or advantage. The portion of the section referred to reads: '"Business" includes all activities or acts, personal or corporate, engaged in or caused to be engaged in with the object of gain, benefit or advantage either direct or indirect, but not casual activities or sales.' It could hardly be seriously contended that those who organized the United Producers and Consumers Co-operative or those who later became members of it by the payment of the required fee, in order that they might purchase goods, wares and merchandise at cost, had no idea of gain, benefit or advantage to themselves. And any activity carried on by the corporation which benefits its organizers or members constitutes business within the meaning of this provision."