(No. 15219.—Judgment affirmed.)

THE HIGHLAND DAIRY FARMS COMPANY, Appellant, *vs.* THE HELVETIA MILK CONDENSING COMPANY *et al.* Appellees.

*Opinion filed April 18, 1923—Rehearing denied June 7, 1923.*

1. PUBLIC UTILITIES—*when private corporations supplying water are not public utilities.* Where two private corporations, because of difficulty in securing water in the city where they are located, construct a reservoir for their own use, the facts that they have allowed the city to attach a few fire hydrants to their water pipes in return for the privilege of laying the pipes in the streets and that they have allowed certain private corporations and individuals to use water do not make them public utilities, so as to require them to furnish water to all who may apply.

2. SAME—*meaning of the term "public utility."* A public utility implies a public use of an article, product or service carrying with it the duty of the producer or manufacturer, or one attempting to furnish the service, to serve the public indiscriminately, and when such producer is once determined to be a public utility under the statute, it must supply its product to all who apply, without discrimination and without delay.

3. SAME—*when State may regulate conduct of business.* Whenever any business or enterprise becomes so closely and intimately related to the public or to any substantial part of a community as to make the welfare of the public, or a substantial part thereof, dependent upon the proper conduct of such business it becomes subject to the exercise of the regulatory power of the State.

4. SAME—*when the Commerce Commission has no jurisdiction.* On a complaint filed with the Commerce Commission against certain private corporations owning a water supply and refusing to

give the complainant water service, the commission has no jurisdiction to compel the giving of the relief prayed where the defendants are not proved to be public utilities.

5. SAME—*extent of jurisdiction of the Commerce Commission.* The jurisdiction of the Commerce Commission is by the terms of the statute confined to the control and supervision of owners and operators of property devoted to a public use and to prosecutions of parties violating the orders of the commission and the provisions of the Public Utilities act.

6. CORPORATIONS—*nature and purpose of corporation are determined largely by its charter.* The nature of a corporation and the purpose of its organization must be ascertained largely by reference to the terms of its charter.

CARTWRIGHT, J., dissenting.

APPEAL from the Circuit Court of Madison county; the Hon. LOUIS BERNREUTER, Judge, presiding.

TERRY, GUELTIG & POWELL, for appellant.

J. P. STREUBER, for appellees.

Mr. JUSTICE CARTER delivered the opinion of the court:

A complaint was filed by the Highland Dairy Farms Company against appellees, the Helvetia Milk Condensing Company and the Highland Brewing Company, upon the ground that they had refused to grant appellant water service, charging that the appellee companies were jointly engaged in furnishing water as a public utility and as such were subject to the provisions of an act to provide for the regulation of public utilities, and praying for such relief as the Commerce Commission could give. On the hearing before the commission it was decided that appellees were private corporations, organized and operated for the purposes provided in their respective charters, and were not operating a public utility, and therefore were not subject to the jurisdiction of the commission, and the complaint was dismissed. A petition for rehearing before the commission was denied. An appeal was taken to the circuit court of

Madison county, where the judgment of the commission was affirmed. This further appeal was prosecuted from the judgment of the circuit court.

It appears from the record that appellant is an unincorporated association, or, as one of the witnesses testified, a common law corporation, engaged in distributing milk and by-products. Appellee the Helvetia Milk Condensing Company is a corporation formed for the purpose of "dealing in milk, manufacturing and selling milk products, and to purchase, acquire and hold such personal property and such real estate as may be deemed necessary for the successful prosecution of its business, and the power to sell and convey such property." Appellee the Highland Brewing Company is incorporated "to make and to deal in beer kegs, barrels, casks and other cooperage used or useful in a brewery, and to make and to deal in malt, beer and ice." The charters of appellees were offered in evidence. The hearing before the commission was held July 18, 1922, and it was decided that appellees had not held themselves out as engaged in furnishing the public a supply of water.

The record shows that the securing of water for the operation of certain businesses and industries in the city of Highland had been for several years before this hearing attended with difficulty; that the appellees, because of the difficulty in obtaining a proper water supply for their work, entered into a contract several years ago with one another under which they prospected for water, sharing the expense equally and agreeing on an equal division of water if a supply were obtained. Various sources of water were investigated by appellees by sinking holes, building dams, piping from a near by creek and impounding spring water, and a large concrete reservoir was constructed about a mile and a half northwest of the city of Highland and the water was piped by gravity to appellees' plants in the city. The record shows that outside of the limits of Highland these pipes were laid in a public road and that the pipes were laid in

the city along certain streets. There is testimony in the record that the right to lay these pipes in the city was by mutual agreement between the city authorities and appellees, with the understanding that for the purpose of fire protection a few tees should be placed in the pipes at different places on two or three streets. There was, however, no written record as to such an understanding between the city and appellees.

The evidence shows that the city of Highland at the time of this hearing had a population of about 3200; that about sixteen persons or concerns were permitted to connect their premises with the pipes of appellees for their private use but that other persons and concerns were denied the privilege by appellees. The evidence also shows that there had never been any public attempt or effort made by appellees to procure patrons for water to be supplied through appellees' pipes, and the evidence tends to show that applicants for such water supply were for the most part discouraged by appellees in applying for such connections. In one or two instances where some mutual advantage appeared the connection with the pipes and use of water were permitted, as in the case of the Pennsylvania railroad, which is the only railroad through that district. It was testified that this railroad company applied for the privilege of supplying its trains with water, but it was at first refused and was only permitted the use of the water when it informed the appellees that unless it was supplied it would refuse to handle appellees' freight. It also appears that certain connections were made with residences, some being those occupied by relatives of officers of appellees. Among the business concerns supplied with water were a pipe organ factory located near one of appellees' plants; also two hotels, a garage, a battery service station, a general store, a bank, a lodge hall and a newspaper office. As heretofore stated, the evidence shows that other concerns and residents applied for but were denied connection with the water service.

Bills were rendered to the consumers of water, but not always at a uniform rate. The evidence shows that when a representative of appellant applied to an officer of one of appellees concerning appellant being supplied with water, that officer told the inquirer that he thought they could supply it, but later the representative was informed that the other appellee refused to entertain the offer, and appellant was denied the connection. It appears also in the testimony of one of the witnesses that the president of the brewing company told the president of appellant at one time, and another witness at another time, that appellees had sufficient water for all who applied but that the milk company would not consent to furnishing it. No witness testified to a knowledge of how much water gathered in the reservoir daily, and there is no testimony, based on any facts in support thereof, to the effect that there was enough water for all who might apply in the city of Highland, but there were opinions given that there would not be sufficient water for all the residents of the city. It is clear from the evidence that the water pipes and mains for conveying water had not been constructed so as to afford universal connections to the inhabitants of said city; that the pipes were run through the city largely as a matter of convenience for the appellees, except that a few tees were put in for fire protection. As already stated, the record does not show whether the tees were put in because required by the city officials or simply as a voluntary favor, the same as when certain individuals were allowed connections for water with the pipes of appellees. We think the weight of the evidence shows that the water plant was constructed for private use and fails to show that appellees held themselves out as an agency or business for supplying the public with water.

On the petition for a rehearing before the Commerce Commission an attempt was made to have the case re-heard on the ground of newly discovered evidence, which it was stated would show that appellees had promised to undertake

to supply the inhabitants of the city, or all who applied, with water, and that when another company was attempting to procure a franchise for the purpose of furnishing water, appellees objected on the ground that they could furnish all the water needed for the city of Highland, and that thereupon the city officials refused to grant the privilege to the company applying for the franchise. It is also alleged in the petition for rehearing that the connections with the pipes of appellees had been increased since the former hearing from sixteen to twenty-five. It also appears from the petition for rehearing that many of the inhabitants of the city are supplied with water through wells and cisterns and that not over five per cent of the inhabitants would become water consumers, and that the supply of water now obtained by appellees would be adequate to take care of all who applied. The commission refused to grant the rehearing and furnish an opportunity for the introduction of this evidence.

It is contended by appellant that by actually supplying water to those who applied, as shown by the record, appellees have become a public utility, even though they have never attempted, so far as the record shows, to comply with the Public Utilities act for permission to act as a public utility. It is argued by counsel for appellees, on the other hand, that a corporation can only be a public utility when it has the corporate power to furnish public service, and that appellees have no charter rights to furnish public service and have never attempted to furnish such public service as to make them a public utility.

We regret to say that counsel differ materially as to the number of residents of Highland that can be or have been served by the water service supplied by appellees, counsel for appellant insisting that practically all of the large institutions and many of the residences are being served, while counsel for appellees insists there is no proof in the record as to the proportion of the large business industries in the city that are being supplied with water, and we find

nothing in the record that definitely answers several of
these questions. All we can pass upon and decide is the
facts as we find them in the record. Counsel for appel-
lant, if they wished to argue that the majority of the busi-
ness industries of the city and many of the private resi-
dences are being served with water by appellees, should have
pointed out specifically when and how in the record such
fact could be ascertained. We are satisfied from the rec-
ord before us that only sixteen different parties were being
served with water from the mains at the time of the hear-
ing, and whether or not additional ones were being supplied
after the hearing was not deemed sufficiently shown to jus-
tify the Commerce Commission in giving another hearing.

A public utility implies a public use of an article, prod-
uct or service, carrying with it the duty of the producer
or manufacturer, or one attempting to furnish the service,
to serve the public and treat all persons alike, without dis-
crimination. (*Utilities Com.* v. *Bethany Telephone Ass'n,*
270 Ill. 183.) The term "public utility," as defined in the
Illinois statute, "means and includes every corporation, com-
pany, association," that "may own, control, operate or man-
age, within the State, directly or indirectly for public use,
any plant, equipment or property used or to be used for or
in connection with the transportation of persons or prop-
erty or the transmission of telegraph or telephone mes-
sages between points within this State; or for the produc-
tion, storage, transmission, sale, delivery or furnishing of
heat, cold, light, power, electricity or water." (2 Hurd's
Stat. 1921, p. 2507.) Whenever any business or enter-
prise becomes so closely and intimately related to the pub-
lic, or to any substantial part of a community, as to make
the welfare of the public, or a substantial part thereof, de-
pendent upon the proper conduct of such business, it be-
comes the subject of the exercise of the regulatory power
of the State. When once determined to be a public utility
under the statute the company must furnish all who apply,

and the service it furnishes must be without discrimination and without delay. The nature, however, of a corporation and the purpose of its organization must be ascertained very largely by reference to the terms of its charter. (*Utilities Com.* v. *Bethany Telephone Ass'n, supra.*) It is clear from the evidence in the record that the appellees did not furnish all applicants with water who applied for service, without discrimination or delay; that they furnished the water that was furnished according to their own wishes, and not without discrimination and without delay.

It is insisted by counsel for appellant that the Helvetia Milk Condensing Company, because of business prejudice, refused to grant appellant the privilege of connecting with the water mains, and while certain witnesses testified on behalf of appellant to this prejudice, there is no contradiction by any of the witnesses on behalf of appellees. We do not find any sufficient data in the record to support the claim of appellant that appellees could serve water to all the consumers now being served and to everyone else that desired such service.

Counsel for appellant argue that the only remedy for the evils they complain of is through the Commerce Commission; that if appellant attempted to call upon the State officials for relief under the provisions of the Public Utilities act, it would be faced at once with the fact that the State's attorney of Madison county was the attorney for appellees in this case in the lower court and also is in this court. They do not state or show that they have attempted to call upon the State's attorney to enforce any of the penalties of the act, or have requested the Attorney General, because the State's attorney is the attorney for appellees, to act for the State in attempting to enforce these penalties, but assume, without attempted proof, that neither of these officers will fairly attempt to enforce the penalties for the alleged violation of the provisions of the Public Utilities act. We find nothing in the record that would justify

in any way the inference that the Attorney General would not give the matter fair consideration as to attempting to enforce the provisions of the Public Utilities act if appellees are violating that act, or that would lead us to assume that the State's attorney, as a public official, would not act conscientiously, as would be his duty, in endeavoring to enforce the law, even though some of his private clients were liable to be punished for its violation.

Counsel for appellant also argue strenuously that the courts should not require a different action in order to enforce against appellees the penalties of the Public Utilities act. They concede that this court in *Public Utilities Com. v. Okaw Valley Mutual Telephone Ass'n,* 282 Ill. 336, said that the Commerce Commission has no jurisdiction to enter an order restraining a corporation which is not organized as a public utility, but that the only remedy is for the commission, by different proceedings in court, to determine whether or not the corporation is engaged in the business of a public utility, under sections 75 to 79, inclusive, of the Public Utilities act. They insist that the companies concerned in the *Okaw Valley Telephone Ass'n case* and in certain other cases therein referred to, were corporations organized for mutual telephone service, and that those decisions were rendered because mutual telephone corporations are not necessarily under the Public Utilities act. In view of the various decisions of this court on this question we think counsel for appellant are mistaken in their conclusions on this point. No statement is made in the opinion in the *Okaw Valley Telephone Ass'n case* that would indicate that the penalty provisions of the Public Utilities act were not enforced in those cases because they concerned mutual telephone companies instead of other public utilities. This court said in the *Okaw Valley Telephone Ass'n case,* on page 340, that it is a part of the duty of the Commerce Commission "to prosecute violators of its rules and orders, as aforesaid, and for violations of the

Public Utilities act the commission has no jurisdiction to entertain a prosecution before it of any party or parties failing or neglecting to obtain a certificate of convenience and necessity who are required to do so under said section 55. It simply has the right and is clothed with the duty to prosecute such parties in the proper courts, as provided in sections 75, 78 and 79." It was held by this court in *Public Utilities Com.* v. *Noble Mutual Telephone Co.* 268 Ill. 411, that the mutual telephone company was subject to the Public Utilities act for regulation by the commission, it being distinctly held that the mutual telephone company in that case was a public utility.

Counsel for appellant earnestly argue at the close of their brief that appellant is entitled to some relief, and that this court ought to see that it obtains it, pointing out the way. What was said by this court in the *Okaw Valley Telephone Ass'n case, supra,* we think points out in detail what the relief is if appellees are violating the provisions of the Public Utilities act. It was there said (p. 342): "It is not necessary or proper for us to determine in this case the question whether or not appellee has exceeded or violated its charter rights, as no such question is presented by this record. If it be true that appellee has violated its charter or usurped rights and powers not granted to it, such violations cannot have the effect to make it a public utility. Such violations, if any, would give the commission the right to proceed against appellee, in the name of the People, by injunction to restrain appellee from the performance of such illegal acts, as provided in section 75, and such action would have to be begun in a proper court of competent jurisdiction to entertain such proceedings, but we can find no provision anywhere in said act that gives the commission jurisdiction to restrain appellee from committing such illegal acts." The reasoning in that opinion on this point applies with full force to the record before us, and construes the power of the Commerce Commission and the courts to as-

certain the rights which appellant claims the authority to exercise. The question whether more extended authority, in greater detail, should be given to the Commerce Commission is for the legislature and not for the courts under the present wording of the act as construed by this court.

If it be true, as argued by counsel for appellant, that appellees in furnishing water to private individuals are acting without authority under their charters, that will not bring them within the jurisdiction of the Commerce Commission though it might subject them to prosecution by the commission in a proper court proceeding. The jurisdiction of the commission is by the terms of the statute confined to the control and supervision of owners and operators of property devoted to a public use and to prosecutions of parties violating the orders of the commission and provisions of the Public Utilities act. It would hardly seem from the reasoning of this court in *Dickman* v. *Madison County Light Co.* 304 Ill. 470, that appellees could be prosecuted for acts *ultra vires* in furnishing to some private individuals water not needed by appellees in the conduct of their business. Under the Public Utilities act as it now exists we think the Commerce Commission and the circuit court rightly held that appellees were not public utilities and subject to the Public Utilities act.

The judgment of the circuit court will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE CARTWRIGHT, dissenting:

The appellees have assumed and exercised the powers of a public utility and enjoyed the resulting benefit but have discriminated between applicants for service and selected favored persons and corporations. It is not their privilege to say that they are absolved from the duties and obligations of a public utility because they have not been lawfully authorized to engage in the business to which such duties and obligations attach.