213 P.2d 677

NATURAL GAS SERVICE CO. et al. v.
SERV–YU COOPERATIVE, Inc.

No. 5087.

Supreme Court of Arizona.

Jan. 24, 1950.

Stanley A. Jerman and Harold L. Jerman, Walter Roche, of Phoenix, for appellant Natural Gas Service Co.

Knapp, Boyle, Bilby & Thompson, Arthur Henderson, of Tucson, for appellant El Paso Natural Gas Co.

Evo De Concini, Attorney General, Perry M. Ling, Chief Assistant Attorney General, for appellant Corporation Commission.

Dougherty, Chandler & Connor, of Phoenix, for appellee.

STANFORD, Justice.

Appellee, plaintiff below, brought its action in the Superior Court praying for a declaratory judgment asking: (1) that the court adjudicate and determine the status of the plaintiff; (2) that the court adjudicate and determine that the plaintiff is not legally bound to secure a certificate of public convenience and necessity before purchasing natural gas of the El Paso Natural Gas Company; (3) that the court adjudicate and determine that the plaintiff is not a public service corporation; and (4) that the court adjudicate and determine that plaintiff is not subject to the jurisdiction of the Corporation Commission of the State of Arizona.

Appellee was incorporated by a group of farmers owning land in Pinal County in and about township 7 south, range 8 east, and townsite 7 south, range 7 east of the G. & S. R. B. & M. The land in question is in a farming area in what is known as

330

the "Casa Grande Valley," Pinal County, Arizona, and extends along and in the vicinity of the main pipe line of the El Paso Natural Gas Company, one of the appellants herein, and is more specifically described as land located some fifteen miles south of Coolidge, Arizona, and approximately three miles north of Eloy, Arizona. It was incorporated on the 4th day of June, 1946 (articles were filed September, 1947) for the purposes, as in its articles stated, "of manufacturing, purchasing, acquiring and accumulating natural gas and to transmit, distribute, furnish, sell and dispose of such gas to its members only for all purposes." The members of appellee have constructed private pipe lines, some of which cross public highways.

At the time this action was filed the appellant, Natural Gas Service Company, a duly certificated public service corporation, owned and maintained pipe lines in the general area as that of the individual members of the plaintiff corporation. The appellant Natural Gas Service Company has been serving the towns of Superior, Florence, Coolidge, Casa Grande and Eloy, as well as individual farmers in Pinal County who use natural gas for pumping irrigation purposes and holds a franchise issued by the Board of Supervisors of Pinal County to cross all public highways in said county. Members of the appellee have been and now are being served by Natural Gas Service Company with natural gas for pumping for irrigation purposes from approximately five taps.

The appellee alleged that before the institution of this action it made application to the El Paso Natural Gas Company for the purpose of purchasing natural gas to be sold and delivered to its members only; that the appellant El Paso Natural Gas Company at first refused to sell said gas to appellee until it secured a certificate of public convenience and necessity from the Corporation Commission of Arizona, but while this case was on appeal to this court the appellant El Paso Natural Gas Company stipulated with appellee that it would serve appellee under the rules and regulations of the Federal Power Commission if it is held by this court that appellee is entitled to distribute gas to its members without securing a certificate of convenience and necessity. Appellant El Paso Natural Gas Company also agreed that if this court required a certificate of convenience and necessity, it would serve appellee gas under the rules and regulations of the Corporation Commission of Arizona. The Corporation Commission holds that in order that the appellee may operate or serve its members, that it must first obtain a certificate of public convenience and necessity.

This case was tried to the court without a jury. Judgment was rendered for appellee, from which judgment all appellants joined in the notice of appeal.

Among the findings of fact are the following:

"VIII. That the Serv-Yu Gas Cooperative, Inc. has never in anywise held itself out as a public service corporation or made

any offer or offers to serve the public or any others than its members; that it has never by any solicitation, declaration, act or any other means, indicated any intention of serving the public generally, or of serving any others than the members of the Cooperative.

"IX. That the Serv-Yu Gas Cooperative, Inc., before the institution of this action, made application to the El Paso Natural Gas Company for the purpose of purchasing natural gas from said company to be sold and distributed, as alleged aforesaid, to the members only of this Cooperative; that the El Paso Natural Gas Company has refused, and continues to refuse, to sell natural gas to this Cooperative, and will continue to refuse to sell gas to this Cooperative until this Cooperative either (a) secures a Certificate of Public Convenience and Necessity from the Corporation Commission of the State of Arizona, or, (b) until such time as it is judicially determined by a Court of competent jurisdiction that plaintiff is not subject to the jurisdiction of the Corporation Commission of the State of Arizona, and is not required to secure such a Certificate; * * *"

"XI. That the Corporation Commission of the State of Arizona, acting in this capacity by the members of said Commission, asserts regulatory jurisdiction over said Serv-Yu Gas Cooperative, Inc. and has insisted and now insists that, in order to operate or serve its members, the Serv-Yu Gas Cooperative, Inc. must obtain a Certificate of Public Convenience and Necessity from said Commission. * *"

Appellant El Paso Natural Gas Company submitted the two following assignments of error:

"1. The Court erred in denying defendant El Paso Company's Motion to Dismiss directed to the complaint, and in denying the said defendant's Motion to Dismiss made at the conclusion of the plaintiff's case, and renewed at the conclusion of all of the evidence, for the reason that the complaint and the evidence adduced at the trial of the action thereunder, failed to present to the Court below any actual justiciable controversy between the plaintiff and the El Paso Company defendant within the terms and the meaning of Article VII, Chapter 27, Arizona Code Annotated 1939.

"2. The Court erred in making its Finding of Fact XIII and in making its conclusion of Law III, and in entering its judgment against the appellant-defendant, El Paso Natural Gas Company, for the reason that there was no evidence whatsoever to support said finding of fact and said conclusion of law based thereon and said judgment rendered, providing or tending to prove in any way that there existed at any time an actual justiciable controversy between plaintiff, appellee, and said appellant within the terms and the meaning of Article VI, Chapter 27, Arizona Code Annotated 1939."

The appellant Natural Gas Service Company submitted the following four assignments of error:

"1. That the Court erred in its Conclusion of Law No. I in holding that plaintiff is a duly organized nonprofit corporation, organized and existing under and by virtue of the laws of the State of Arizona, and duly authorized and qualified to accomplish its corporate purposes and perform its corporate functions for the reason that there is no law, either statutory or constitutional, in Arizona, under which plaintiff could or is authorized to incorporate to carry out its corporate purposes.

"II. That the Court erred in its Conclusion of Law No. II in holding that the plaintiff corporation, if duly authorized to exist under the laws of the State of Arizona) is not subject to the regulatory powers of the Arizona Corporation Commission and is not required to obtain a certificate of Convenience and Necessity for the reason that plaintiff corporation, by virtue of its proposed objectives, is in substance a public utility and is subject to the control and jurisdiction of the Corporation Commission.

"III. That the Court erred in its Finding of Fact Nos. I and IV in finding that the plaintiff corporation will serve natural gas at cost and is a nonprofit corporation for the reason that the evidence does not support such a finding.

"IV. That the Court erred in its Finding of Fact No. VIII in finding the plaintiff corporation has never indicated any intention of serving the public generally, for, in fact, the evidence shows that the plaintiff corporation must take in any member who can comply with the bylaws and can, and will, deny admission and service to no person or groups who comply therewith."

The appellant Corporation Commission of Arizona submitted the following assignment of error: "The lower court erred in determining that appellee is not a public service corporation, is not subject to supervision, regulation and control by the Arizona Corporation Commission and is not required to obtain a certificate of convenience and necessity from said commission as a condition precedent to its operations."

The principal contention in this case is that the appellee must procure from the Corporation Commission of Arizona a certificate of convenience and necessity before it can deliver gas to its members.

The first brief filed in matter of time in this action was the one filed by the El Paso Natural Gas Company and while we find it impossible to confine ourselves to the issues brought up in that brief only, we will first discuss the matters listed in its brief.

El Paso Natural Gas Company contends that it is not a public utility and is under no statutory or common law duty to serve

private consumers along its pipe lines, in that it operates an interstate pipe line conveying natural gas from fields in New Mexico and Texas for sale in interstate commerce for authorities for resale for ultimate public consumption under the terms of the Natural Gas Act, Vol. 15 U.S. C.A. §§ 717 through 717w. In part we quote from said act:

"(a) * * * it is declared that the business of transporting and selling natural gas for ultimate distribution to the public is affected with a public interest, and that Federal regulation in matters relating to the transportation of natural gas and the sale thereof in interstate and foreign commerce is necessary in the public interest.

"(b) The provisions of this chapter shall apply to the transportation of natural gas in interstate commerce, to the sale in interstate commerce of natural gas for resale for ultimate public consumption for domestic, commercial, industrial, or any other use, and to natural-gas companies engaged in such transportation or sale, but shall not apply to any other transportation or sale of natural gas or to the local distribution of natural gas or to the facilities used for such distribution or to the production or gathering of natural gas." 15 U.S.C.A. § 717.

Further appellant contends it is subject to the jurisdiction of the Federal Power Commission as an interstate utility and appellant refuses and has at all times refused to serve any individual consumers, but recognized that such individual consumers should be served only through the medium of a public utility authorized under the laws of Arizona to do intra-state public utility business.

From the evidence in the case it is evidently the theory of the appellant (El Paso Natural Gas Company) that its organization is not and does not intend to become a distributor of natural gas and retail to any and all members of the public. The appellant being limited by the extent of its undertaking to serve only such organizations as may be classified as public utilities, cannot under the Natural Gas Act serve this appellee.

The El Paso Company at first claimed that the judgment sought by appellee would not involve any actual controversy or determine any legal rights between the appellee and this appellant since appellant could only refuse to serve appellee. To serve it, this appellant would have to qualify as a public utility company doing business as such in Arizona and appellee also would have to procure a certificate of convenience and necessity from the Corporation Commission and be under the jurisdiction of that commission and subject to its regulations, but by the stipulation filed by the El Paso Gas Company, and since no affirmative relief is sought against this appellant by appellee, the issues between them are now moot.

In reference to appellant Natural Gas Service Company, its principal contention is that even though the appellee is styled as

a nonprofit organization, it is not such, and also that the appellee comes under the jurisdiction of the Corporation Commission of Arizona. Appellant Natural Gas Service Company claims that the El Paso Company entered into right-of-way agreements with certain individual farmers who granted rights-of-way to El Paso Natural Gas Company provided that they were served through the nearest utility in that community. Intending to prove this contention Marshall A. Moody, president of the Natural Gas Service Company, appellant, testified as follows:

"Mr. Jerman: Q. Mr. Moody, have you adopted regulations regarding the constructing of lines to the users for irrigation purposes? A. They were filed and approved by the Corporation Commission.

"Q. And what is that regulation now? A. I would have to read it more or less to get it correct.

"Q. (Counsel handed a document to the witness.) A. That is on Page 9, Article 40, of Section 6, I believe, isn't it?

"Q. Will you read it, Mr. Moody? A. Yes. 'Main line extensions. The Company shall serve gas to all consumers using gas for pumping water for irrigation along a main line of the El Paso Natural Gas Company in Pinal County.'"

*    *    *    *    *    *

"The Court: What I am trying to get at, you don't take it out through a master tap and distribute it yourself; you tap the line anywhere it is necessary, as long as it meets the approval of the El Paso? A. Yes, sir. In fact that was one of the considerations in going through their lands, you see, that they would be allowed one tap.

*    *    *    *    *    *

"Q. At the present time, Mr. Moody, you have a service agreement with each and every one of these members of this plaintiff corporation? A. Yes.

"Q. Written contracts? A. Yes; just their regular counter form.

"The Court: They are uniform for all consumers? A. Yes, just a counter form; about the same thing."

Article 15, Section 2, Constitution of Arizona, reads as follows: "All corporations other than municipal engaged in * * * furnishing gas, oil, or electricity for light, fuel, or power; * * * shall be deemed public service corporations."

What we said in our case of Olsen v. Union Canal & Irrigation Co., 58 Ariz. 306, 119 P.2d 569, 574, is clearly applicable and determinative of the liability of the appellee to regulation as a public service corporation. "It was contended at the oral argument that the company and its predecessor were mutual nonprofit organizations and had for many years been conducted as such, with no profit or dividends. It is doubtless true they were conducted in such a manner that no dividends as such were earned or paid out, but their articles of incorporation

and the evidence show clearly that, as a matter of law, they have always belonged to that class of corporations described in section 2, article 15 of the Constitution of Arizona as public service corporations. * * *"

Under the heading of "Nature of Business" in the Articles of Incorporation of the appellee, we find the following paragraph: "(a) To manufacture, purchase, acquire and accumulate natural gas and/or gas and all other residual products resulting from the manufacture of gas for its members and to transmit, distribute, furnish, sell and dispose of such gas to its members only and to supply gas to its members for lighting, heating, motive power or any other purpose whatsoever and to acquire, construct, erect, lay down, maintain, enlarge, alter and use all such lands, buildings, easements, gas and other works, machinery, plants, stock, pipes, lamps, motors, fittings, meters, apparatus, materials and things and to supply all such materials, products and things as may be necessary, incident or convenient in connection with the production, use, storage, regulation, measurement, supply and distribution of any of the products of the company; to construct and maintain all lines of pipe or tubing for the transportation of gas or natural gas or other fluids or liquids; * *".

Significant also are the By-laws of appellee. We quote in part:

"*Requirements for Membership.* Any person, firm, association, corporation, or body politic or subdivision thereof may become a member in Serv-Yu Gas Cooperative, Inc., (hereinafter called the "Cooperative,") by:

\* \* \* \* \* \*

"(b) agreeing to purchase from the Cooperative natural gas under the terms and conditions as specified by the Board of Directors; * * *".

With reference to the cases of appellee and in support of their contention that this is a proper case for declaratory judgment, it quotes from the case of Woodward v. Fox West Coast Theaters, 36 Ariz. 251, 284 P. 350, 352:

"The controversy here is over the validity of the ordinances and also the lease contract and falls within the statute (section 4386, Uniform Declaratory Judgments Act, above quoted), which provides that: 'Any person interested * * * may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder.'

"We think the proper parties, both plaintiff and defendant, are present; that the pleadings show both have an interest in the subject-matter, and that the questions involved are 'real and not theoretical.' The demurrer was therefore properly overruled."

Appellee also quotes from Merrill v. Phelps, 52 Ariz. 526, 84 P.2d 74; Washington-Detroit Theater Company v. Anna

Moore, 249 Mich. 673, 229 N.W. 618, 68 A.L.R. 105; Peterson v. Central Arizona Light & Power Company, 56 Ariz. 231, 107 P.2d 205, 208. From the latter case we quote: "In the second place, the declaratory judgment act expressly provides that it may be resorted to whether further relief is or could be claimed, and that it 'shall not be open to the objection that a declaratory judgment only is prayed for.' * * * 'Section 12. This Act is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered.'"

We reaffirm the last two quoted cases which were presented by appellee and hold that the instant case comes under our Declaratory Judgment Act.

The appellee has quoted from the Natural Gas Act, supra, two paragraphs heretofore quoted by us which obviated our quotation of same, but it further quotes:

"717a Definitions * * *

"(6) 'Natural-gas company' means a person engaged in the transportation of natural gas in interstate commerce, or the sale in interstate commerce of such gas for resale."

"Sec. 717f * * *

"(a) Whenever the Commission, after notice and opportunity for hearing, finds such action necessary or desirable in the public interest, it may by order direct a natural-gas company to extend or improve its transportation facilities, to establish physical connection of its transportation facilities with the facilities of, and sell natural gas to, any person or municipality engaged or legally authorized to engage in the local distribution of natural or artificial gas to the public, and for such purpose to extend its transportation facilties to communities immediately adjacent to such facilities or to territory served by such natural-gas company, if the Commission finds that no undue burden will be placed upon such natural-gas company thereby: * *."

The testimony already quoted shows that the appellant Natural Gas Service Company has a service agreement with each of the members of plaintiff corporation for delivery of gas and the manner of the use of such gas is determinative of whether it is subject to the control of our Corporation Commission.

The testimony shows that the El Paso Company causes taps to be made on its main line to farmers who have given rights-of-way and made by experts who know how to handle that work. Then the matter is turned over to the Natural Gas Service Company. The testimony further shows that the Natural Gas Service Company installs the meters and regulators.

The testimony of Marshall A. Moody, president of the appellant Natural Gas Service Company in the case of O. W. Rugg, who has a pipe line off of the main

line of the El Paso Company, shows the following:

"Q.  And on the O. W. Rugg line you or your company own the meter and the regulator?  Is that correct?  A.  That is right.

"Q.  And he owns— A.  He owns all the pipeline from the meter.

"Q.  And maintains it?  A.  That is right."

Mr. Moody testified that Serv-Yu Gas Company had not, at the time of trial, served natural gas to anyone.  In answer to the question,

"Q.  All right.  And you contend, or your Company contends, being a certificated holder, that no one is entitled to serve natural gas in that territory?  Is that correct?

        *    *    *    *    *    *

"A.  According to my contract and convenience and necessity, I am the only man that is supposed to serve along the main line their taps.

        *    *    *    *    *    *

"Q.  I say, to your knowledge have you ever known of this Co-operative here offering to sell natural gas to anyone except its members?  A.  I don't know how you could offer it when you haven't got any for sale."

The testimony of O. W. Rugg, secretary of the appellee, we find to be as follows:

"Q.  Now, Mr. Rugg, on this line of yours it appears that there is a domestic user.  To be more definite, are you serving a domestic user there?  A.  No, he is a renter, and he pays the complete gas bill.

"Q.  And who has a meter there?  A. The El Paso Natural—no, the Natural Gas Service Company.

"Q.  So that Mr. Moody's company has a meter at the end of your line?  A.  He has one—you have got two there, haven't you, Marshall?  (Meaning Mr. Moody)

        *    *    *    *    *    *

"Q.  And if a municipal corporation wishes to belong to your Association, they could do that by complying with the by-laws?  A.  I believe that is correct.

"Q.  Subject to the same provisions for the suspension of members upon non-payment of the bills?  A.  Anybody who got anything in this corporation would have to abide by the by-laws and the corporation papers.

"Q.  And it is entirely conceivable upon proper application that every inhabitant in the Town of Coolidge that wants gas service would become a member of your Co-operative and receive gas from you? A.  I presume it is possible.

        *    *    *    *    *    *

"Q.  Then, the only purpose of this Co-op is to eliminate the Natural Gas Service Company, the certificate carrier in the field?  Is that correct?  A.  I presume that is so.

"Q. And actually the only purpose for the existence of this legal entity, if it does exist, that is, as a Co-op, is to act as a billing agent for about eight or nine members who will entirely own all of the assets upon which the gas is used, in the distribution of gas? A. That is correct.

\* \* \* \* \* \*

"Q. \* \* \* In your proposed operation how will you arrive at the amount of the gas bill of each individual member of the Co-op? Would you explain that to me? A. By the meters.

"Q. Yes, I know, but is that all you are going to do, just take the meter reading? A. Well, you have to take the master meter reading on a line off the El Paso Natural Gas Company, and the other meter readings on an extension will have to be reconciled to the master meter."

Under the testimony quoted, the appellee does not purchase gas of the El Paso Natural Gas Company, but purchases it from Natural Gas Service Company the utility that has complied with the law of our state. The testimony shows that the El Paso Company has refused at all times to serve any individual consumer, and has required that service to individuals should be made only through the medium of the public utility authorized under the laws of Arizona to do intra-state public utility business.

■■■ Under the articles of incorporation of the appellee as heretofore set forth appellee has the power to manufacture, purchase, acquire and accumulate natural gas and/or gas and all other residual products resulting from the manufacture of gas for its members and to transmit, distribute, furnish, sell and dispose of such gas to its members, who may include any person, firm, association, corporation, or body politic or subdivision thereof complying with the by-laws of the corporation not only in the vicinity of Coolidge and Pinal County, but throughout the entire State of Arizona and the entire Southwest provided only that they are accepted by the Board of Directors. There is no way this court can know to what extent the membership of the appellee may be increased. It can go to any number. Its character as a corporation whether it is a public service corporation or otherwise must be determined by what its articles and by-laws authorize it to do rather than by what it is now doing or may do in the immediate future. The appellee has asked this court to declare its status in this respect in order that it may know what to do in the matter of the conduct of its business, and this court holds that from the law and evidence, and especially our constitution, Article 15, Section 2, the appellee is a public service corporation and subject to the jurisdiction of the Corporation Commission of Arizona and is required to secure a certificate of public convenience and necessity.

The judgment of the trial court is accordingly reversed and the case is remand-

ed with instructions to enter judgment for defendants Natural Gas Service Company and the Corporation Commission of Arizona in accordance with this pronouncement.

LA PRADE, C. J., and UDALL and PHELPS, JJ., concurring.

NOTE. Justice DE CONCINI, whose name appears on the briefs as Attorney General, did not participate in this opinion.