339 P.2d 1046

**TRICO ELECTRIC COOPERATIVE, INC.,** a corporation, Appellant,

v.

**CORPORATION COMMISSION OF The State of ARIZONA and William T. Brooks, George Senner and E. T. "Eddie" Williams, Members of the Corporation, Commission of The State of Arizona; Tucson Gas, Electric Light and Power Company, a corporation; and Citizens Utilities Company, a corporation, Appellees.**

No. 6590.

Supreme Court of Arizona.

May 20, 1959.

Rehearing Denied July 7, 1959.

Lewis, Roca, Scoville, Beauchamp & Linton, and John P. Frank, Phoenix, and Hall, Catlin & Jones, Tucson, for appellant and cross-appellee.

Robert Morrison, Atty. Gen., Jack G. Marks, Special Asst. Atty. Gen., for Corporation Commission of the State of Arizona.

Evans, Kitchel & Jenckes, and Earl H. Carroll, Phoenix, for Citizens Utility Co.

L. V. Robertson, Tucson, Jennings, Strouss, Salmon & Trask and Clarence

J. Duncan, Phoenix, for Tucson Gas, Electric Light and Power Co.

Snell & Wilmer, Perry M. Ling, and Nicholas H. Powell, Phoenix, for Arizona Public Service Co., amicus curiae.

PHELPS, Chief Justice.

This is an appeal by Trico Electric Co-operative, Inc., a corporation, from a judgment of the superior court and cross-appeals by the Corporation Commission and its members and by Tucson Gas, Electric Light and Power Company, a corporation, and Citizens Utilities Company, a corporation.

For the purpose of brevity and clarity the parties before the court will be hereinafter designated as Trico, Tucson Gas, the Commission, and Citizens as they appear in the respective briefs before us. Trico is an electric cooperative corporation organized under the laws of Arizona in October 1945, and authorized to engage in business as such in the State of Arizona. Its declared purpose was to generate, purchase and acquire electricity and sell and distribute the same to its members. Under its charter it operates a nonstock corporation on a nonprofit basis. Membership therein must be evidenced by a certificate of membership therein as fixed by its by-laws. Membership fees were fixed in its charter at five dollars which may be increased by its bylaws. The Arizona Corporation Commission is a public body created and existing under and by authority of Article 15 of the Arizona Constitution, A.R.S. with powers set forth therein implemented by the provisions of Title 40 A.R.S. Tucson Gas, Electric Light and Power Company and Citizens Utilities Company are private corporations engaged in the distribution and sale of gas and electricity as public utilities, authorized to exercise many and sundry powers under their charters deemed necessary to efficiently serve as public utilities in Arizona.

This cause of action arose out of a complaint filed with the Commission by a group of members of Trico, representing others in that area similarly situated, and asked, among other things, that the Commission take jurisdiction of Trico as a public service corporation and control its rates. In answer to the complaint and an order to Trico to appear and show cause, Trico responded denying that it was a public service corporation subject to the jurisdiction of the Commission, and in the alternative incorporated in the response an application for a certificate of convenience and necessity to construct and operate an electric distribution system for the purpose of supplying electric energy to residences, farms, businesses and establishments in certain areas in Pinal, Pima and Santa Cruz Counties as described therein.

A hearing was had by the Commission on June 21, 1955, and evidence presented.

Tucson Gas made appearance at this hearing in opposition to the alternative application for certificate of public convenience and necessity. The hearing was continued to September 29, 1955 at which time appearances were made by both Tucson Gas and Citizens in opposition to the application of Trico for a certificate of public convenience and necessity. At the conclusion of this hearing the Commission took the matter under advisement and on February 24, 1956 it handed down its opinion and order holding that it had jurisdiction over Trico. It found that Trico was serving electricity to several hundred consumers in Pima, Pinal and Santa Cruz Counties, and that there had been and then was a need for such service to its members.

It further found that Trico operated under different economic conditions than do privately financed utilities; that Citizens had a valid certificate of convenience and necessity issued by the Commission to operate in Santa Cruz County; that three consumers in Santa Cruz County did seek service from Trico and were being served electricity by it; that Citizens was then ready, able and willing to serve said consumers; that Tucson Gas had been issued by it various certificates of convenience and necessity to operate in Pima County and portions of Pinal and Cochise Counties.

Upon the above findings the Commission assumed jurisdiction over Trico and ordered that a certificate of convenience and necessity be issued to it to operate in Pinal, Pima and Santa Cruz Counties upon its filing with the Commission all documents required by the Commission, and held that Trico is and shall be subject to the jurisdiction of the Commission.

By its order, Trico was to operate as a cooperative serving its member-consumers then being served in Pima, Pinal and Santa Cruz Counties, with a slight exception, and authorizing it to continue to expand its facilities and service in rural areas to member-consumers with the qualification that Trico was expressly prohibited from constructing electrical distribution lines that duplicate existing facilities of any other utility unless they first seek permission from such utility, and if refused it may then seek permission from the Commission. Trico was further prohibited from serving any consumer within one-half mile of lines of any other distributor of electricity whose lines were constructed prior to those of Trico without permission from the certified utility in the area. Trico under such circumstances was required to notify the certificated utility that application had been made to it for service and seek permission from it to serve within the one-half mile area. If agreement could not be reached then the Commission would

determine the matter. Citizens was given ninety days within which to serve three consumers being served by Trico in Santa Cruz County. If it did not do so then Trico was authorized to continue its service; otherwise, it was to discontinue such service. Motions for rehearing were duly filed with the Commission by Trico and Tucson Gas which were denied.

Within the time prescribed under the provisions of A.R.S. § 40–254, Trico filed its complaint in the superior court of this state against the Commission and its members, alleging that the opinion and order of the Commission is unlawful and void, arbitrary, and in excess of its jurisdiction and power, and in contravention of the laws and Constitution of the State of Arizona; and praying that said opinion and order be set aside in certain particulars and that the Commission be declared to be without jurisdiction over Trico and, in the alternative, that it be issued a certificate of public convenience and necessity to construct and operate an electric transmission and distribution system as constructed by it and to expand in areas described as lying within certain sections, townships and ranges, all in southern townships and ranges east. The Commission duly answered said complaint.

Thereafter, on April 20, 1955, Tucson Gas duly filed a complaint in the Superior Court against the Commission and its members, alleging that at all times since the issuance of a certificate of convenience and necessity it has held itself out to the public throughout Pima County and in portions of Pinal and Cochise Counties as a public utility and has adequately served the public pursuant to the laws of Arizona, and rules and regulations of the Commission; and that Trico is a public service corporation subject to the jurisdiction of the Commission and alleged that in its opinion and order the Commission, paragraph 2(b) thereof, purports to authorize Trico to demand hearings in relation to serving electrical energy to consumers being served or previously served by Tucson Gas within its franchised area, and asserting that the Commission is without jurisdiction to authorize Trico to serve electric energy to consumers being served or previously served electric energy by Tucson Gas within its franchised area, and praying that the court enter an order adjudging that the Commission is without jurisdiction to permit or authorize Trico to serve electric energy to such consumers within its franchised area and asking for a ratification of said order in all other respects.

After the cause reached the superior court, Citizens on April 5, 1957 sought permission to and did intervene in said cause as a party defendant and adopted the answer of the Commission to Trico's complaint as its answer. The record is voluminous and has many ramifications.

The trial court, after a long and tedious trial, took the matter under advisement, and after due consideration made findings of fact and conclusions of law and rendered judgment therein, affirming the order and opinion of the Commission in all of its particulars, except that it modified the portion thereof forbidding Trico from serving electricity to anyone within one-half mile of lines of any other distributor of electricity which were constructed prior to those of Trico. The court deleted the portion relating thereto to the effect that Trico must notify such other distributor that application had been made by a prospective consumer for electric service and obtain such distributor's consent to render the service requested, and if consent could not be obtained the Commission would be the determining agency. The court required only that Trico apply to the Commission for permit to render such service.

The court added to the order and opinion of the Commission that Trico "shall serve only its members" the words "or anyone applying for service." In all other particulars the court affirmed said order and opinion.

■ Trico first asserts that the trial court erred in approving the assumption by the Commission of jurisdiction over Trico (a) because Trico is not a public service corporation and (b) that there is no substantial evidence establishing such juris-diction. The answer to this is that the Arizona Constitution, Article 15, Section 2, states in clear and concise language that:

"All corporations other than municipal engaged * * * in furnishing gas, oil, or electricity for light, fuel, or power * * * shall be deemed public service corporations."

Section 3 of said article vests in the Commission full power to regulate such public service corporations in the transaction of their business within the state and it is authorized therein to make such reasonable rules and regulations governing their business as the convenience, comfort and safety, and the preservation of the health of the employees and patrons of such corporations may require, provided however, that incorporated cities and towns may be authorized by law to exercise supervision over public service corporations doing business therein. We held the Commission had jurisdiction over Cooperatives in Natural Gas Service Co. v. Serv-Yu-Cooperative, 69 Ariz. 328, 213 P.2d 677, 70 Ariz. 235, 219 P.2d 324. However we do not rely entirely upon the reasons set forth in that case for our conclusion in this case. The language of the Constitution is too clear to admit of any other interpretation than that reached under the facts of this case. No further evidence is required to determine that issue than that offered by Trico. The allegations in the complaint and evidence offered in support thereof adequately establish that

Trico is a *public service corporation* engaged in furnishing * * * electricity for light, fuel or power to its member-consumers in Pima, Pinal and Santa Cruz Counties. Being a public service corporation it is subject to the jurisdiction of the Commission. Article 15, Sections 2 and 3 Arizona Constitution, supra.

It is next urged by Trico that the order of the court expressly or impliedly restricts Trico to expansion only in rural areas and to member-consumers, and charges this to be error. Article 4, Section 1 of its charter states the nature and purpose of Trico is,

"To promote and encourage the fullest practical use of electrical energy *in rural and adjacent areas* of the State of Arizona on a nonprofit basis, at the lowest cost consistent with such economy and prudent management of the corporate business." (Emphasis supplied.)

and Section 2 thereof authorizes it

"To generate, manufacture, purchase and acquire electric energy principally for its members and to transmit, distribute, furnish, sell and dispose of such electric energy."

A declared purpose of its existence is to promote and encourage the fullest practical use of electric energy *in rural and adjacent areas*. The only purpose for creating a demand for its fullest practical use in these areas would necessarily be to sell it in rural and adjacent areas.

Article 5 provides that it shall be a nonstock corporation, membership therein to be evidenced by a certificate of membership at a fee of five dollars, or such increase as its bylaws may provide. Membership certificates shall be fully paid and nonassessable.

Trico admits in its brief that it serves only members, that pre-members are served only while records are being completed. We perceive the invasion of no basic rights of Trico under its charter by reason of the assumption of jurisdiction over it by the Commission and in restricting its service to rural and adjacent areas. This jurisdiction has existed in the Commission since its creation by the organic law of the state, and Trico's charter fixes its area of service. The trial court was justified in finding that convenience and necessity required its regulation to prevent competition with public utilities under the principle of regulated monopolies to prevent waste and duplication in service. In refusing to hold that a general alarm system was a public service corporation and not subject to regulation by the Corporation Commission we said in General Alarm, Inc. v. Underdown, 76 Ariz. 235, 262 P.2d 671, that to be a public service corporation its business and activities must be such as to make its rates, charges and methods of operation, a matter of public concern,

clothed with a public interest to the extent contemplated by law which subjects it to governmental control—its business must be of such a nature that competition might lead to abuse detrimental to the public interest.

It is admitted in the briefs of both Trico and Tucson Gas that their rights have recently become conflicting and competitive and Trico claims that further conflicts are threatened by "spite" extension lines. There can be no doubt that competition in any considerable area with either Tucson Gas or Citizens in the distribution and sale of electric energy to consumers in their respective areas could result in waste to both Trico and its competitor, and consequently, be a detriment to the consumers of both to the extent of the waste caused thereby. As we have said the paramount concern of the state in such matters is the welfare of the individual citizens who under our economic system, ultimately bear the burden of unbridled and wasteful competition. Trico's capacity to compete with Tucson Gas and Citizens in the distribution and sale of electric energy only to its members, does not differ in its effect upon the consumers from the competition of Tucson Gas and Citizens with another public utility except in degree.

■ Trico next complains that it is prohibited from duplicating existing electrical facilities when there is no such order outstanding as to any other utility duplicating Trico. The answer is that it is implicit in the principle of regulated monopolies that duplication of services is prohibited. Any restrictions, however, imposed upon any other parties to this action would have been wholly outside the issues of this case and pure dictum. Whether Tucson Gas or Citizens may duplicate Trico's lines will undoubtedly be decided by the Commission when the issue is presented to it. The issues presented under the pleadings were limited primarily to the rights and powers of Trico only. The only issue raised relating to Tucson Gas was the extent of the area for which it had been certificated.

■ The next complaint of Trico is directed at the restriction in the judgment forbidding Trico to serve any consumer located within one-half mile of lines of any other distributor of electricity which were constructed prior to those of Trico, without first obtaining authority from the Commission, upon the ground that it is contrary to public convenience and necessity, is impractical, unreasonable, unlawful and discriminatory, and will encourage wasteful practices. Suffice it to say that Subsection C of A.R.S. § 40–282 provides that:

"The commission may, after hearing, issue the certificate or refuse to issue it, or issue it * * * for the

partial exercise only of the right or privilege, and may attach to the exercise of rights granted by the certificate terms and conditions it deems that the public convenience and necessity require."

and Subsection E of A.R.S. § 40–254 provides that:

"In all trials, actions and proceedings the burden of proof shall be upon the party adverse to the commission or seeking to vacate or set aside any determination or order of the commission to show *by clear and satisfactory evidence that it is unreasonable or unlawful.*" (Emphasis supplied.) Corporation Commission of Arizona v. People's Freight Line, 41 Ariz. 158, 16 P.2d 420; Corporation Commission v. Southern Pac. Co., 55 Ariz. 173, 99 P.2d 702.

The trial judge found as a conclusion of law:

"That the plaintiff, Trico Electric Cooperative, Inc., has failed to show by clear and satisfactory evidence that the Opinion and Order of the Corporation Commission * * * is unreasonable or unlawful, except to the extent as modified herein, and that therefore it is the conclusion of this Court that such Opinion, and Order and Decision, except as herein modi-

fied, should be upheld, sustained and affirmed."

Subsection C of A.R.S. § 40–282, supra, clearly authorizes the Commission to impose such a restriction of which complaint is made as a condition upon which the certificate of convenience and necessity should issue, providing, however, that such conditions imposed are not unreasonable or unlawful. The court affirmed the conditions imposed by the Commission in substance except that it deleted therefrom the condition that Trico should first seek the permission of any certified utilities then existing in the area after notification to them that application had been made for such service. If consent was not obtained then the Corporation Commission should be the deciding agency. The deletion made by the court was obviously proper and manifestly favorable to Trico. However, the court found that Trico had not shown by clear and satisfactory evidence that the order of the Commission was either unlawful or unreasonable, and upheld the one-half mile restriction imposed. We fully agree with this finding. The testimony of Trico's expert witness Blaelock alone justifies this finding. The testimony of Trico's other expert witness Dr. Gifford was favorable to Trico. We suspect the trial court believed it to be too favorable to inspire faith in its verity. In

any event the trial court was the judge of the facts.

■ The next complaint is that the judgment of the court required Trico to serve not only its members but "any one applying for service." We are of the view that this is a valid complaint. Construing the Articles of Incorporation of Trico as a whole, we are definitely of the view that the intent and purpose therein expressed is that it was to operate as a nonstock and nonprofit cooperative, and thus to serve its members only. Any attempt to go beyond the service of electric energy to its members would be ultra vires and void. Trico Electric Cooperative v. Ralston, 67 Ariz. 358, 196 P.2d 470. Whatever the purpose was for injecting the word "principally" into the clause empowering Trico "to generate, manufacture, purchase and acquire electric energy *principally* for its members * * *" (Emphasis supplied.) it did not have the effect of changing the nature and purpose of its business to other than that of an electric cooperative, and thereby limited to service of its members only.

■ Trico claimed that the court erred in approving the order of the Commission allowing Citizens ninety days in which to serve Bell and Marley in the northwest corner of Santa Cruz County, and in the event Citizens furnished such service within ninety days Trico was to discontinue its service and remove its installations;

otherwise, it might continue such service. We believe Trico is correct in this position. The uncontroverted facts are that at the time Trico made its installations and began its service of electricity to Bell and Marley it was free to enter that area and serve its members without let or hindrance from any source, as had been its practice. Bell had resided where he then resided, and had been a member of Trico since 1947. He had been receiving electrical service from Trico for about two years at the date of trial. He was under no obligation to apply for service from Citizens, nor was Trico under any legal duty to Citizens at that time to procure its consent before entering that area. It was free to rove at will until jurisdiction was assumed by the Commission, so long as it sought to serve its members in rural areas and was not challenged by a utility previously certificated to serve that area. It is a different situation now, however, since the Commission has assumed jurisdiction over it and imposed restrictions upon it. The evidence shows Bell had desired electrical service for eight years after he became a member of Trico. Citizens had not offered to serve him although it then had a distribution line within five miles of his residence and sometime before trial, extended a service line to the Sopori Ranch.

Its present installations violate no regulation then in existence, and it does not now violate the one-half mile restriction

imposed by the Commission and affirmed by the court. Trico expended a considerable sum of money in making the installations preparatory to service to those members; if required to remove them, according to the testimony of all witnesses testifying concerning it, but little of the cost thereof could be salvaged. For the above reason we believe the order of the Commission requiring Trico to remove said installations and its affirmance by the court is inequitable, unreasonable and unlawful as a matter of law, and inasmuch as it is on Trico's line from Twin Buttes to Arivaca, in the extreme northwest corner of Santa Cruz County, public convenience and necessity will not be served by requiring Trico to remove its installations. Counsel for Citizens admitted in his argument, in effect, that continued service to these particular consumers was of little consequence. Therefore, that portion of the judgment in effect, denying Trico's legal right to continue service to Bell and Marley, should be deleted from the judgment.

█ Counsel for Trico complains that the order of the Commission as approved has made a "second-class citizen" of Trico. If by the term "second-class citizen" counsel means that the Commission has classified Trico as something less than a full-fledged "public utility" we agree, but it is our view that the classification is correct. A public utility is a person, corporation or other association carrying on an enterprise for the accommodation of the public, the members of which as such are entitled as of right to use its facilities. It carries with it the duty of one attempting to furnish the service to serve the public and treat all persons alike without discrimination. Highland Dairy Farms Co. v. Helvetia Milk Condensing Co., 308 Ill. 294, 139 N.E. 418, 420; Pulitzer Pub. Co. v. Federal Communication Commission, 68 App.D.C. 124, 94 F.2d 249; Junction Water Co. v. Riddle, 108 N.J.Eq. 523, 155 A. 887, 889.

█ In other words, a public utility is a person, corporation or association engaged in a business affected with a public interest and therefore must serve everyone in the area where it operates who applies for service. It cannot refuse such service. *Trico is only required to serve its own members and under its charter is only empowered to serve its members.* The Commission assumed jurisdiction over it, not because it was a public utility but because it was and is a public service corporation, clearly defined as such by the clear and concise language of the Constitution quoted above. The Commission is mandated under the provisions of Article 15, Sections 2 and 3 of the Arizona Constitution to prescribe just and reasonable classification to be used, and just and reasonable rates to be made and collected by it. It was the claim of some of its members that unjust rates were being charged by it

that occasioned the institution of this action although we infer from the record that the claims were not sustained by the evidence. Article 15, Section 2, supra, definitely makes it a public service corporation, as we stated above. It is in a position, in the distribution of electricity, to wage a competitive war with Tucson Gas or Citizens which could, without proper restriction, result in undue waste by the duplication of lines or other competitive measures to the detriment of all consumers in the area affected. If we need anything other than the language of the Constitution as authority for the jurisdiction of the Corporation Commission over Trico, the threatened competitive war between Tucson Gas and Trico makes it imperative that Trico be subjected to the regulatory powers of the Commission.

Because of the many claims made by Trico without clearly designating to which group of findings of fact and conclusions of law it referred, it has been not too easy to pursue an orderly discussion of the questions raised, but we believe we have given expression to our views on all questions raised by Trico affecting its rights under the law and under its charter.

Tucson Gas claims that it is certificated to conduct a public utility business throughout Pima County and in portions of Pinal and Cochise Counties, both under the grandfather clause of our laws and by virtue of a series of certificates of convenience and necessity issued to it by the Commission, all of which we hold to be valid as hereinafter limited, including the certificate bearing date July 5, 1939. An examination of the foregoing certificates leads us to the conclusion that Tucson Gas is not authorized however to operate throughout Pima County as claimed. The area described in the certification is in Tucson and vicinity and an examination of the maps confirms this view. The conduct of Tucson Gas itself in applying for certificates of convenience and necessity to serve the areas described therein which were an extension of the territory then being served by it, evidences its own views in the matter, although acting under compulsion to meet the requirements of financial institutions as a condition precedent to procuring a loan. The financeers must have questioned the validity of Tucson Gas' claim of county wide certification. We will take judicial notice of the desert character of Pima County, of its size and the sparsity of population in large areas thereof, and we believe neither it nor the Corporation Commission, in issuing said certificates, intended at the time of their issuance that Tucson Gas should have an absolute monopoly upon the distribution of electric energy throughout all of Pima County, regardless of how rapidly it may be converted into highly productive agricultural, industrial or mining and smelting

areas, and regardless of what public necessity and convenience might require in the future. We do not think it affects the economy of Tucson Gas whether it has or has not such a certification. In any event, inasmuch as Trico is now certificated to serve electric energy to rural areas to its members in Pima, Pinal and Santa Cruz Counties, Tucson Gas must procure a certificate of convenience and necessity if it desires to extend its service to a noncontiguous area to its present area of service. This must be done by application to the Commission and if the convenience and necessity of the community requires it the Commission will no doubt issue a certificate therefor.

We have hereinabove disposed of the questions raised on cross-appeals both by Tucson Gas and Citizens. For the reasons above stated the amended judgment of the trial court is ordered modified by deleting therefrom the provisions that Trico shall serve "anyone applying for service", and by deleting therefrom the provisions that:

> "Citizens Utilities Company shall be given a period of ninety (90) days in which to serve the three consumers in Santa Cruz County or Trico Electric Cooperative, Inc., shall be allowed to continue to serve them."

thus, leaving Trico to continue such service, and as modified, the judgment of the trial court is affirmed, and it is so ordered.

STRUCKMEYER, UDALL and BERNSTEIN, JJ., and J. SMITH GIBBONS, Superior Court Judge, concur.

Justice J. MERCER JOHNSON, being disqualified, the Honorable J. SMITH GIBBONS, Judge of Superior Court, Apache County, was called to sit in his stead and participated in the determination of this appeal.